IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:19-ct-03190-BO

KENNETH R. JENKINS,

    Plaintiff,

v.

SHERIFF CALVIN L. WOODARD JR.,

    Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant Wilson County Sheriff Calvin L. Woodard Jr., in his individual and official capacity, by and through counsel, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 7.2(a), hereby submits this memorandum of law in support of his motion for summary judgment filed in this matter.

## STATEMENT OF THE CASE

Plaintiff Kenneth R. Jenkins, an inmate proceeding *pro se*, filed his initial form Complaint on June 25, 2019. [D.E. 1]. Therein, Plaintiff named as defendants the Wilson County Jail and the Edgecombe County Jail. Plaintiff filed his Amended Complaint on January 31, 2020, naming as defendants: The Wilson County Sheriff's Office, Wilson County Sheriff Calvin Woodard (in both his individual and official capacities), Wilson County Detention Officers Ronald Jones and Barbara Israel (in both their individual and official capacities); and removing the Edgecombe County Jail as a defendant.

In his Amended Complaint, Plaintiff asserts federal constitutional claims pursuant to 42 U.S.C. §1983 for the purported violations of his rights under the First and Fourteenth Amendments to the United States Constitution. [See D.E. 17]. Specifically, Plaintiff alleges that he suffered

unsanitary conditions of confinement at the Wilson County Detention Center ("WCDC") due to the defendants' neglect, that the defendants hindered Plaintiff's reporting of his medical conditions and obstructed his ability to exhaust administrative remedies in reporting these violations. [Id. at ¶ 5].

Plaintiff contends that Sheriff Woodard "failed to uphold his duty towards accountability [sic]" and answered only one "out of a multitude of complaints"; defendant Israel "maintained intolerance toward pretrial detainees" and "utilized collegiality to hide misconduct and ability to report matters [sic]"; defendant Jones "tacitly went along with collegiality to hide misconduct and ability to report matters [sic]"; and that Nurse Woody and Head Nurse Dawn both "refused to identify [themselves] for proper reporting and participated with other staff utilizing collegiality to hide misconduct and ability to seek assistance [sic]." Id.

Plaintiff notes that he entered the Detention Center on August 28, 2018, and, although he initially was in the general population, plaintiff was moved to a suicide prevention cell from approximately September 5 to September 9, 2018. Id. at 6. Plaintiff contends that, in both the suicide prevention cell and in the general population, there was 1) feces on the wall and floors where plaintiff both laid and ate, and 2) "green bacteria" on his food trays. Id. Plaintiff alleges that, due to these unsanitary conditions at the WCDC, "and the cumulative effect of staff obstructing my ability to report the matter and utilizing collegiality, ignoring the right to report the matter to clean and to seek medical attention [sic]," he contracted a Helicobacter Pylori infection and required surgery. Id. at 6-7. Plaintiff asserts he suffers medical consequences due to the infection. Id. at 7.

For relief, Plaintiff sought: an injunction to sanitize, and to "allow the N.C. Department of Environment and Quality to thoroughly inspect," the Detention Center; a permanent injunction to

provide cleaning supplies daily to the inmates of the WCDC; monetary damages; and "to be provided the same health insurance provider and coverage as Wilson County Sheriff department, filing fees and coverage paid by the decedents, for life [sic]." Id. at 8.

On October 7, 2020, Chief District Court Judge Terrence W. Boyle conducted a frivolity review of Plaintiff's lawsuit pursuant to 28 U.S.C. § 1915, and issued an Order allowing the case to continue as to defendant Woodard in his individual and official capacity, but dismissing all other defendants. [See D.E. 20]. In particular, the Court noted that, "Plaintiff's amended complaint, liberally construed, asserts that Sheriff Woodard was actually aware of plaintiff's grievances regarding these allegedly execrable conditions of confinement but took no action. Accordingly, plaintiffs Fourteenth Amendment claim as to Sheriff Woodard is not clearly frivolous." Id. at 4. The Court further stated that there was no First Amendment component to Plaintiff's claims, but held that his case could proceed under the Due Process Clause of the Fourteenth Amendment. Finally, the court found that Plaintiff's requests for injunctive relief at the WCDC were mooted by Plaintiff's intervening conviction and subsequent incarceration in the North Carolina Department of Public Safety. Id.

Defendant Woodard timely filed an Answer on November 9, 2020, therein denying the material allegations of the Amended Complaint and asserting numerous affirmative defenses. [D.E. 26].

Wilson County Sheriff Calvin Woodard (in his individual and official capacities) now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that Plaintiff cannot demonstrate any violation of his constitutional rights by the defendant, and that the defendant is otherwise entitled to qualified immunity.

## STATEMENT OF FACTS

On August 28, 2018, Plaintiff entered the WCDC as a pretrial detainee, charged with two counts of attempted First Degree Murder, one count of Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury, and one count of a Domestic Violence Protection Order with a Deadly Weapon. [Compl., D.E. 17 at 6]. (Aff. of Captain Marc Connor ¶4; Aff. of Lieutenant Ronald Jones ¶3; see also Motion and Order Committing Defendant to Central Regional Hospital – Butner Campus for Examination on Capacity to Proceed, attached hereto as Exhibit 1). Although he initially was in the general population, plaintiff was moved to a suicide prevention cell from approximately September 5 to September 9, 2018. [D.E. 17 at 6].

Plaintiff suffers from a long history of bipolar disorder, depression, and severe mood swings. He attempted to commit suicide in July 2018 by shooting himself because he heard voices telling him to do so. (Exhibit 1).

During his stay at WCDC, Plaintiff filed several formal grievances. His grievances included, *inter alia*, notifying jail staff that he could not eat corn or salami because he has diverticulitis, complaints that the jail was not cleaned properly, a complaint that there was "green bacteria" in his food, and multiple complaints about the medical staff failing to give him the proper medications. (Connor Aff. ¶4; Grievances, attached hereto as Exhibit 2).

Plaintiff's grievance regarding certain foods he could not eat due to diverticulitis was handled by Lieutenant Shirley Woodard, who notified the kitchen staff and jail nurse of the issue so they could adjust Plaintiff's menu accordingly. (Connor Aff. ¶5; Exhibit 2 at 1).

With regard to cleaning procedures at the jail, WCDC inmates are given a mop bucket to clean the floors of their cell blocks on a weekly basis. Jail trustees (inmates that have demonstrated good behavior and the ability to follow WCDC rules) use cleaning supplies to clean the toilets,

walls, tables, and common areas. Detention Officers or maintenance staff are responsible for cleaning any biohazardous waste, including fecal matter, blood and other bodily fluids. Biohazardous waste is cleaned promptly, and no inmate has ever been forced to sleep in a cell with feces on the walls or floors. (Connor Aff. ¶6). When discussing his grievance with Capt. Connor, Plaintiff advised that he was dissatisfied with WCDC sanitation and cleaning policies, stating that he thought the detention officers (rather than inmates) should do all cleaning. (Connor Aff. ¶5).

In response to Plaintiff's grievance about the cleanliness of his cell-block, Captain Connor inspected Plaintiff's cell-block and cell, finding both to be clean and orderly. Capt. Connor advised Plaintiff that, if his cell was not clean enough for him, then the captain would make sure Plaintiff was given cleaning supplies. Capt. Connor also spoke with Sheriff Woodard about Plaintiff's grievance. Sheriff Woodard made an exception to the WCDC policy forbidding cleaning supplies to remain in the cell-block (for safety reasons), and allowed Plaintiff to keep a mop bucket and washcloth in his cell. (Connor Aff. ¶5; Aff. of Lieutenant Ronald Jones ¶5; Exhibit 2 at 6). After this exception was made, Plaintiff complained that the washcloth he received was not big enough. Id. Plaintiff later falsely claimed that he was never given cleaning supplies. (Connor Aff. ¶5).

WCDC undergoes an annual inspection by the North Carolina Department of Health and Human Services, Division of Environmental Health. (Connor Aff. ¶7; 2018 and 2019 Inspection of Local Confinement Facility Report, attached hereto as Exhibit 3). As demonstrated by the attached reports, WCDC passed its inspection in 2018 and 2019 – roughly the same time period that Plaintiff was at the facility. Id. The facility received some point deductions in August 2019 for chipping paint, a few torn (but clean) blankets, and an ice machine that needed cleaning. However, the inspectors did not note any issues with drinking water, vermin control, or food storage and handling. In fact, temperature measurements taken of food being stored in coolers as

well as food being served to inmates were within the specified ranges. And, the dishwasher and mop buckets were found to have appropriate levels of chlorine to properly sanitize the facility. (Connor Aff. ¶7; Exhibit 3 at 3).

Plaintiff's grievance about the kitchen food trays having "green bacteria" in them was addressed by Lt. Jones. Lt. Jones never observed green bacteria in any food trays and no other inmates ever made such a complaint. (Jones Aff. ¶6; Exhibit 2 at 7). Despite this, Lt. Jones notified the kitchen manager of Plaintiff's complaint and asked them to ensure that the food trays were properly cleaned. Lt. Jones remembers Plaintiff claiming that the food at WCDC made him sick to the point he allegedly needed surgery. However, no other inmates claimed that the food made them sick or needed medical attention because the food served at WCDC actually made them sick. (Jones Aff. ¶6).

Plaintiff's medical records from WCDC show that the only hospital procedure he had performed under sedation while at WCDC was a colonoscopy on May 31, 2019. (See excerpts of Plaintiff's medical records, attached hereto as Exhibit 4). Plaintiff's colonoscopy revealed multiple polyps, some of which were removed during the procedure, diverticulitis, and Helicobacter pylori. There is no evidence in Plaintiff's WCDC records that he ever underwent any surgery while detained at the facility. The medical records also show that Plaintiff never told his medical providers that he thought unsanitary conditions (including food) at WCDC caused him health problems; nor did the doctors advise Plaintiff that he had any health problems because of unsanitary conditions. (See for ex., Exhibit 4 at 3).

Helicobacter pylori is a very common bacterium, infecting nearly two-thirds of the world's population. (See Center for Disease Control ("CDC") Travelers' Health Guide and cited study, of which the Court should take judicial notice, and attached hereto as Exhibit 5). The infection is

typically acquired during childhood, and most people who are infected never suffer any symptoms related to the infection. (Exhibit 5 at 1 and 4). Asymptomatic infections do not need to be treated. Patients with active duodenal or gastric ulcers should be treated if they are infected. Standard treatment is a course of antibiotics, which Plaintiff received. (Id. at 1 and Exhibit 4 at 8).

Lt. Jones also handled Plaintiff's grievances regarding medical treatment from the jail medical staff. Plaintiff's first grievance in this regard was a complaint that the nurse gave him the wrong mediations on February 24, 2019. (Jones Aff. ¶7; Exhibit 2 at 4). In response, Lt. Jones spoke with the nurse, who confirmed that Plaintiff properly received the medications that he was prescribed. Id.

Plaintiff made another grievance on June 16, 2019, stating that the nurse, whom he called a "fat white bitch," gave him the wrong dose of medications the previous day. Plaintiff also wrote in his grievance that he was "gonna [sic] curse that fat bitch out and I hope she cry." In response, Lt. Jones once again confirmed with the nurse that she dispensed Plaintiff's medications as prescribed. The lieutenant then informed Plaintiff that he should promptly inform the detention officers if he had an issue with his medications or the nurse. Plaintiff was also told that jail staff would not respond to any future grievances he filed that contained foul or abusive language. (Jones Aff. ¶7; Exhibit 2 at 2).

Plaintiff filed two grievances on July 28, 2019, claiming that "Nurse Christy" gave him the wrong medications three times in one day. (Jones Aff. ¶7; Exhibit 2 at 3, 5). Lt. Jones talked with the medical staff, who once again stated that Plaintiff was given his proper medications. Id.

Capt. Connor investigated Plaintiff's complaints with regard to his medical treatment. He spoke with the WCDC medical staff to ensure that they were making and keeping appointments requested by the Plaintiff. Capt. Connor also informed Plaintiff that the detention center officers

had to follow the opinions of the medical staff with regard to medical treatment for inmates. (Connor Aff. ¶8).

Plaintiff is no longer an inmate at WCDC. [D.E. 20]. During Plaintiff's detainment at WCDC, Sheriff Woodard had no direct contact or involvement with Plaintiff other than to approve Plaintiff's request to keep cleaning supplies in his cell. (Aff. of Sheriff Woodard ¶6). During the performance of his duties as the elected Sheriff of Wilson County, and particularly with respect to Mr. Jenkins, defendant Woodard and his staff acted in good faith, without malice, and to the best of their abilities. Defendant did not observe, nor was he aware of, any events or circumstances that caused him to have any doubt that WCDC was being cleaned and maintained properly, or that Mr. Jenkins was receiving adequate medical care. Defendant does not have any information to cause him to doubt the jail or medical staff's professional judgment or decisions with regard to Mr. Jenkins. Defendant was not, and is not, aware of any information to suggest that Mr. Jenkins was mistreated while he was detained in the WCDC or that his constitutional rights were violated in any way. (Woodard Aff. ¶8; Connor Aff. ¶9; Jones Aff. ¶8)

## ARGUMENT

### I.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).

## II. Plaintiff's Claims Against Sheriff Woodard Alleging Deliberate Indifference to a Serious Medical Need Fail as a Matter of Law

Plaintiff asserts a Section 1983 claim against defendant Woodard in his official and individual capacity for deliberate indifference to his serious medical needs. The undisputed evidence in this matter demonstrates that the defendant did not actually know of <u>and</u> disregard any objectively serious medical condition, medical need, or risk of harm, such that he is entitled to qualified immunity and otherwise to summary judgment in his favor.

A prison guard acts with deliberate indifference to an inmate's serious medical needs by intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104–05 (1976); <u>Watson v. Brown</u>, 446 Fed. Appx. 643, 645 (4th Cir. 2011). "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of <u>and</u> disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; see also <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995). To establish a claim of deliberate indifference to serious medical needs, "the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." <u>Id</u>.

Moreover, it is well settled that prison officials are entitled to rely on the medical judgments made by prison medical personnel. <u>See</u>, <u>e.g.</u>, <u>Farmer</u>, 511 U.S. at 837; <u>Shakka</u>, 71 F.3d at 167; <u>Smith v. Barry</u>, 985 F.2d 180, 184 (4th Cir. 1993) (affirming directed verdict for prison guards not in a position to "act meaningfully" with regard to inmate's medical needs); <u>Miltier v. Beorn</u>, 896 F.2d 848, 854–55 (4th Cir. 1990), overruled in part on other grounds by <u>Farmer v. Brennan</u>, 511

U.S. 825 (1994); see also Mason v. Angelone, No. Civ. A.7:01–CV–309, 2003 WL 23312780, at *4 (W.D. Va. Mar. 31, 2003) ("[A] medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct.") (citations omitted), aff'd, 71 Fed. Appx. 283 (4th Cir. 2003).

Further, neither mistakes in medical judgment, nor disagreements between an inmate and medical personnel regarding proper treatment, nor the fact that treatment is ineffective alone rise to the level of "deliberate indifference." See Estelle, 429 U.S. 97, 107 (1976); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); see also Webb v. Hamidullah, 281 Fed. Appx. 159, 166 (4th Cir. 2008). Mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–106; Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir.1998).

Here, the undisputed evidence demonstrates that Plaintiff received adequate medical care from the medical staff while detained at WCDC. Defendant Woodard, through his staff, ensured that Plaintiff was able to make and attend appointments with the WCDC medical staff. Sheriff Woodard's staff, namely Capt. Connor, also confirmed with the medical staff that Mr. Jenkins was given all of his prescribed medications. (Connor Aff. ¶8; Jones Aff. ¶7).

In addition, the medical records show that Plaintiff never had surgery as he alleges. Rather, he had a colonoscopy with polyp removal on May 31, 2019. (Exhibit 4). An incidental finding during that procedure was that Plaintiff's bowels contained Helicobacter Pylori, which is a bacterium found in about two-thirds of the world's population. (Id. and Exhibit 5). The CDC has made statements regarding this bacterium, of which the Court should take judicial notice. Specifically, the CDC has advised that this bacterium is typically acquired during childhood, and

that asymptomatic disease should not be treated. If symptoms related to this bacterium are suspected, then treatment is a course of antibiotics, which Plaintiff received. (Id.; Exhibit 4 at 8).

Finally, the medical records show that neither Plaintiff nor his doctors blamed any sort of "unsanitary conditions" at WCDC or otherwise as a cause of any of Plaintiff's health problems. The treatment that is advised, and that Plaintiff received, is a course of antibiotics, not surgery. Id.

At no time did defendant Woodard personally, or through his polices, deny Plaintiff medical treatment; nor did he deliberately interfere with the jail nurse's treatment, or tacitly authorize or act indifferent to known misconduct by medical personnel. Accordingly, there was no violation of the Plaintiff's constitutional rights, such that the defendant is therefore entitled to summary judgment.

### III. Plaintiff's Claim Regarding the Conditions of his Confinement Fails as a Matter of Law

As to Plaintiff's Fourteenth Amendment claim, courts evaluate the confinement conditions of pretrial detainees under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See Kingsley v. Hendrickson, 135 S.Ct. 2466, 2475 (2015). As a practical matter, however, this Due Process Clause analysis is materially indistinguishable from an Eighth Amendment analysis. See Brown v. Harris, 240 F.3d 383, 388-89 (4th Cir. 2001).

To show that prison conditions violate the Eighth Amendment, "a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). "[T]he first showing requires the court to determine whether the deprivation of the basic human need was objectively sufficiently serious." Id. (emphasis and quotation omitted). The second showing "requires [the court] to determine whether subjectively the officials acted with a sufficiently culpable state of mind." Id. (emphasis, alteration, and quotation omitted). To satisfy

the second, subjective showing, a plaintiff must prove that the official acted with deliberate indifference. See id.; Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than negligence…[but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

It also must be remembered that "the Constitution does not mandate comfortable prisons" and prisons "cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Therefore, a deprivation of a basic human need is "only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

In the instant matter, Plaintiff's allegation that WCDC was unsanitary fails as a matter of law. There is no dispute that WCDC passed its annual health inspections during the time Plaintiff was detained there. It is also undisputed that those inspections revealed that foods were being stored and served at proper temperatures. Further, the inspectors found no issues with the cleanliness of the toilet and bathroom facilities or the kitchen. No other inmates complained of unsanitary conditions or became ill from the food that was served. It is also undisputed that the facility was regularly cleaned, and that Plaintiff was given his own cleaning supplies to more thoroughly clean if he desired. (Connor Aff. ¶7; See also Exhibit 3).

Assuming *arguendo* that Plaintiff could show the he was subjected to conditions of confinement at WCDC so unsanitary as to be a serious deprivation of a basic human need (which he cannot), defendant Woodard did not act with deliberate indifference with regard to these conditions. Rather, the undisputed facts show that defendant Woodard authorized Plaintiff to keep cleaning supplies in his cell, Lt. Jones ensured that the kitchen staff was properly cleaning the food

trays, and Capt. Connor personally inspected Plaintiff's cell to ensure it was properly cleaned. (Woodard Aff. ¶6; Connor Aff. ¶5; Jones Aff. ¶6).

In conclusion, Plaintiff's claim that he was subjected to unsanitary conditions of confinement at WCDC fails as a matter of law because Plaintiff was not deprived of a basic human need, and because the defendant acted in good faith, without malice, and to the best of his abilities with regard to Mr. Jenkins.

**IV.    The Defendant is Entitled to Summary Judgment as to Plaintiff's Section 1983 Claims Against Him in His Official Capacity**

Plaintiff also purports to sue defendant Woodard in his official capacity. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985) (quoting Monell v. Department of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611, (1978)). Thus, Plaintiff's claims against the defendant in his official capacity is really a claim against the Office of the Sheriff of Wilson County.

Plaintiff's federal constitutional claims against the Office of Sheriff must fail, because, as demonstrated earlier in this brief, the defendant did not violate Plaintiff's constitutional rights. It is well established that a municipality cannot be held liable under Section 1983 where there has been no constitutional violation. See, e.g., Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir. 1990). Even assuming *arguendo* that plaintiff's constitutional rights were violated, the Office of Sheriff is nevertheless entitled to summary judgment because, as discussed below, the alleged constitutional violations were not the result of any official policy, practice, or custom of the Office of Sheriff.

The Office of Sheriff may not be held liable under 42 U.S.C. § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional

tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-121, 112 S.Ct. 1061, 1066, 117 L. Ed. 2d 261 (1992) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978)). In other words, the doctrine of *respondeat superior* may not serve as the basis for imposing Section 1983 liability on a governmental entity. Collins, 503 U.S. at 121, 112 S.Ct. at 1067; City of Canton v. Harris, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206-07, 103 L. Ed. 2d 412 (1989). Instead, governmental liability attaches only when "execution of a government's policy or custom, whether made by its law makers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell, 435 U.S. at 694, 98 S.Ct. at 2037-38. "Thus, not only must there be some degree of 'fault' on the part of the [governmental entity] in establishing or tolerating the custom or policy, but there also must exist a causal link between the custom or policy and the deprivation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 820, 105 S.Ct. 2427, 2434-35, 85 L. Ed. 2d 791 (1985).

In practice, the Plaintiff must show either 1) that his rights were impaired as a result of an official policy, practice, or custom promulgated by the governmental entity, Jett v. Dallas Independent School District, 491 U.S. 701, 735-736, 109 S.Ct. 2702, 2723, 105 L. Ed. 2d 598 (1989); Monell, supra; or 2) that his rights were impaired by the act or acts of an individual who has final policymaking authority for the challenged act to establish municipal liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L. Ed. 2d 452 (1986); Jett, supra.

In the instant case, Plaintiff has not brought forward any evidence that the alleged constitutional violations were caused by an official custom or policy of the Office of Sheriff. Indeed, the evidence before this court actually demonstrates that, assuming *arguendo*, Plaintiff's constitutional rights were violated, they were not violated as a result of any official policy or practice of the Sheriff's Office.

Furthermore, it is clear in this case that, assuming Plaintiff's constitutional rights were violated, his rights were not impaired by the act of an individual who has final policymaking authority. Sheriff Woodard is the only individual who possesses "final policymaking authority" regarding policies within the Wilson County Sheriff's Office. Sheriff Woodard was not directly involved in the alleged constitutional violations, and Plaintiff has not shown – and cannot show – that Sheriff Woodard personally violated Plaintiff's constitutional rights.

In short, the Plaintiff has failed to meet the requirements for establishing Section 1983 liability on the part of the Wilson County Sheriff's Office. Thus, the "official capacity" suit against the defendant fails as a matter of law.

### IV. The Defendant is Entitled to Qualified Immunity as to Plaintiff's Section 1983 Claim Against Him in His Individual Capacity

For the reasons set forth above, Plaintiff's claims against the defendant in his individual capacity fail as a matter of law. However, assuming that the defendant in some way caused a violation of Plaintiff's constitutional rights, which is denied, he is entitled to qualified immunity.

The rule regarding qualified immunity, as set out in Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), states that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See, e.g., Mitchell v. Forsyth, 472 U.S. 511, 535 n. 12 (1985). The question of whether an official is entitled to qualified immunity is one of law. Pachaly v. City of Lynchburg, 897 F.2d 723 (4th Cir. 1990). If the law governing the defendant's conduct is not clearly established at the time of the alleged deprivation, the defendant is entitled to qualified immunity. Mitchell, supra. The plaintiff has the burden of showing that the law was "clearly established" at the time of the alleged deprivation. Clark v. Link, 855 F.2d 156, 160-61 (4th Cir. 1988).

In regard to Plaintiff's claim of inadequate medical treatment, the defendant had no reason to believe that Plaintiff was not receiving proper medical attention. As a matter of law, the defendant was entitled to rely upon the medical judgments of medical personnel and to assume that they were properly performing their duties. Farmer, 511 U.S. at 837; Shakka, 71 F.3d at 167; Smith, 985 F.2d at 184. Moreover, the defendant did not observe Plaintiff to have any obvious and serious medical conditions or issues that a non-medical layperson could discern. Grayson, 195 F.3d at 695. In addition, the defendant did not do anything to deliberately interfere with or delay any medical treatment or attention for Plaintiff.

The Plaintiff cannot show that the defendant, or any objectively reasonable officer in his position, would have known that his acts with regard to Plaintiff's medical treatment or conditions of confinement were in violation of clearly established law. Accordingly, he is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment should be granted and Plaintiff's claims against him should be dismissed with prejudice.

Respectfully submitted this the 5th day of April, 2021.

/s/ Thomas M. Wilmoth
Thomas M. Wilmoth
N.C. State Bar No. 41684
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: 336-747-4706
Facsimile: 336-726-6906
E-mail: Tom.Wilmoth@wbd-us.com

*Attorney for Defendant*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 5, 2021, he electronically filed the foregoing Defendants' Memorandum of Law in Support of His Motion for Summary Judgment with the Clerk of Court using the CM/ECF system.

It is further certified that on April 5, 2021, a copy of the foregoing Defendants' Memorandum of Law in Support of His Motion for Summary Judgment was sent to the following non-CM/ECF participant via United States First-Class Mail at his last known address, such address being identified by the Court as his address of record:

Kenneth Ray Jenkins
0569762
Southern Correctional Institution
272 Glen Road
Troy, NC 27371

*Pro se Plaintiff*

/s/ Thomas M. Wilmoth
Thomas M. Wilmoth
N.C. State Bar No. 41684
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: 336-747-4706
Facsimile: 336-726-6906
E-mail: Tom.Wilmoth@wbd-us.com

*Attorney for Defendant*