IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:19-ct-03190-BO

KENNETH R. JENKINS,

    Plaintiff,

v.

SHERIFF CALVIN L. WOODARD, JR.,

    Defendant.

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**

NOW COMES defendant Sheriff Calvin L. Woodard, Jr., by and through counsel, pursuant to Local Rule 56.1, and provides the following Statement of Material Facts in support of the defendant's Motion for Summary Judgment:

1. On August 28, 2018, Plaintiff entered the WCDC as a pretrial detainee, charged with two counts of attempted First Degree Murder, one count of Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury, and one count of a Domestic Violence Protection Order with a Deadly Weapon. [Compl., D.E. 17 at 6]. (Aff. of Captain Marc Connor ¶4; Aff. of Lieutenant Ronald Jones ¶3; Exhibit 1).

2. Although he initially was in the general population, plaintiff was moved to a suicide prevention cell from approximately September 5 to September 9, 2018. [D.E. 17 at 6].

3. Plaintiff suffers from a long history of bipolar disorder, depression, and severe mood swings. He attempted to commit suicide in July 2018 by shooting himself because he heard voices telling him to do so. (Exhibit 1).

4. During his stay at WCDC, Plaintiff filed several formal grievances. His grievances included, *inter alia*, notifying jail staff that he could not eat corn or salami because he has

diverticulitis, complaints that the jail was not cleaned properly, a complaint that there was "green bacteria" in his food, and multiple complaints about the medical staff failing to give him the proper medications. (Connor Aff. ¶4; Exhibit 2).

5. Plaintiff's grievance regarding certain foods he could not eat due to diverticulitis was handled by Lieutenant Shirley Woodard, who notified the kitchen staff and jail nurse of the issue so they could adjust Plaintiff's menu accordingly. (Connor Aff. ¶5; Exhibit 2 at 1).

6. With regard to cleaning procedures at the jail, WCDC inmates are given a mop bucket to clean the floors of their cell blocks on a weekly basis. Jail trustees (inmates that have demonstrated good behavior and the ability to follow WCDC rules) use cleaning supplies to clean the toilets, walls, tables, and common areas. Detention Officers or maintenance staff are responsible for cleaning any biohazardous waste, including fecal matter, blood and other bodily fluids. Biohazardous waste is cleaned promptly, and no inmate has ever been forced to sleep in a cell with feces on the walls or floors. (Connor Aff. ¶6).

7. When discussing his grievance with Capt. Connor, Plaintiff advised that he was dissatisfied with WCDC sanitation and cleaning policies, stating that he thought the detention officers (rather than inmates) should do all cleaning. (Connor Aff. ¶5).

8. In response to Plaintiff's grievance about the cleanliness of his cell-block, Captain Connor inspected Plaintiff's cell-block and cell, finding both to be clean and orderly. Capt. Connor advised Plaintiff that, if his cell was not clean enough for him, then the captain would make sure Plaintiff was given cleaning supplies. Capt. Connor also spoke with Sheriff Woodard about Plaintiff's grievance. Sheriff Woodard made an exception to the WCDC policy forbidding cleaning supplies to remain in the cell-block (for safety

reasons), and allowed Plaintiff to keep a mop bucket and washcloth in his cell. After this exception was made, Plaintiff complained that the washcloth he received was not big enough. Id. Plaintiff later falsely claimed that he was never given cleaning supplies. (Connor Aff. ¶5; Aff. of Lieutenant Ronald Jones ¶5; Exhibit 2 at 6).

9. WCDC undergoes an annual inspection by the North Carolina Department of Health and Human Services, Division of Environmental Health. WCDC passed its inspection in 2018 and 2019 – roughly the same time period that Plaintiff was at the facility. (Connor Aff. ¶7; Exhibit 3).

10. WCDC received some point deductions in August 2019 for chipping paint, a few torn (but clean) blankets, and an ice machine that needed cleaning. However, the inspectors did not note any issues with drinking water, vermin control, or food storage and handling. In fact, temperature measurements taken of food being stored in coolers as well as food being served to inmates were within the specified ranges. And, the dishwasher and mop buckets were found to have appropriate levels of chlorine to properly sanitize the facility. (Connor Aff. ¶7; Exhibit 3 at 3).

11. Plaintiff's grievance about the kitchen food trays having "green bacteria" in them was addressed by Lt. Jones. Lt. Jones never observed green bacteria in any food trays and no other inmates ever made such a complaint. (Jones Aff. ¶6; Exhibit 2 at 7).

12. Lt. Jones notified the kitchen manager of Plaintiff's complaint and asked them to ensure that the food trays were properly cleaned. Lt. Jones remembers Plaintiff claiming that the food at WCDC made him sick to the point he allegedly needed surgery. However, no other inmates claimed that the food made them sick or needed medical attention because the food served at WCDC actually made them sick. (Jones Aff. ¶6).

13. Plaintiff's medical records from WCDC show that the only hospital procedure he had performed under sedation while at WCDC was a colonoscopy on May 31, 2019. The colonoscopy revealed multiple polyps, some of which were removed during the procedure, diverticulitis, and Helicobacter pylori. There is no evidence in Plaintiff's WCDC records that he ever underwent any surgery while detained at the facility. The medical records show that Plaintiff never told his medical providers that he thought unsanitary conditions (including food) at WCDC caused him health problems; nor did the doctors advise Plaintiff that he had any health problems because of unsanitary conditions. (Exhibit 4).

14. Helicobacter pylori is a very common bacterium, infecting nearly two-thirds of the world's population. The infection is typically acquired during childhood, and most people who are infected never suffer any symptoms related to the infection. Asymptomatic infections do not need to be treated. Patients with active duodenal or gastric ulcers should be treated if they are infected. Standard treatment is a course of antibiotics, which Plaintiff received. (Exhibits 4 and 5).

15. Lt. Jones handled Plaintiff's grievances regarding medical treatment from the jail medical staff. Plaintiff's first grievance in this regard was a complaint that the nurse gave him the wrong mediations on February 24, 2019. In response, Lt. Jones spoke with the nurse, who confirmed that Plaintiff properly received the medications that he was prescribed. (Jones Aff. ¶7; Exhibit 2 at 4).

16. Plaintiff made another grievance on June 16, 2019, stating that the nurse, whom he called a "fat white bitch," gave him the wrong dose of medications the previous day. Plaintiff also wrote in his grievance that he was "gonna [sic] curse that fat bitch out and I hope she cry." In response, Lt. Jones once again confirmed with the nurse that she dispensed

Plaintiff's medications as prescribed. The lieutenant then informed Plaintiff that he should promptly inform the detention officers if he had an issue with his medications or the nurse. Plaintiff was also told that jail staff would not respond to any future grievances he filed that contained foul or abusive language. (Jones Aff. ¶7; Exhibit 2 at 2).

17. Plaintiff filed two grievances on July 28, 2019, claiming that "Nurse Christy" gave him the wrong medications three times in one day. Lt. Jones talked with the medical staff, who once again stated that Plaintiff was given his proper medications. (Jones Aff. ¶7; Exhibit 2 at 3, 5).

18. Capt. Connor investigated Plaintiff's complaints with regard to his medical treatment. He spoke with the WCDC medical staff to ensure that they were making and keeping appointments requested by the Plaintiff. Capt. Connor also informed Plaintiff that the detention center officers had to follow the opinions of the medical staff with regard to medical treatment for inmates. (Connor Aff. ¶8).

19. Plaintiff is no longer an inmate at WCDC. [D.E. 20].

20. During Plaintiff's detainment at WCDC, Sheriff Woodard had no direct contact or involvement with Plaintiff other than to approve Plaintiff's request to keep cleaning supplies in his cell. (Aff. of Sheriff Woodard ¶6).

21. During the performance of his duties as the elected Sheriff of Wilson County, and particularly with respect to Mr. Jenkins, defendant Woodard and his staff acted in good faith, without malice, and to the best of their abilities. Defendant did not observe, nor was he aware of, any events or circumstances that caused him to have any doubt that WCDC was being cleaned and maintained properly, or that Mr. Jenkins was receiving adequate medical care. Defendant does not have any information to cause him to doubt the jail or

medical staff's professional judgment or decisions with regard to Mr. Jenkins. Defendant was not, and is not, aware of any information to suggest that Mr. Jenkins was mistreated while he was detained in the WCDC or that his constitutional rights were violated in any way. (Woodard Aff. ¶8; Connor Aff. ¶9; Jones Aff. ¶8)

Respectfully submitted this the 5th day of April, 2021.

/s/ Thomas M. Wilmoth
Thomas M. Wilmoth
N.C. State Bar No. 41684
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: 336-747-4706
Facsimile: 336-726-6906
E-mail: Tom.Wilmoth@wbd-us.com

*Attorney for Defendant*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 5th, 2021, he electronically filed the foregoing Defendant's Statement of Material Facts with the Clerk of Court using the CM/ECF system.

It is further certified that on April 5th, 2021, a copy of the foregoing Defendant's Statement of Material Facts was sent to the following non-CM/ECF participant via United States First-Class Mail at his last known address, such address being identified by the Court as his address of record:

Kenneth Ray Jenkins
0569762
Southern Correctional Institution
272 Glen Road
Troy, NC 27371

*Pro se Plaintiff*

/s/ Thomas M. Wilmoth
Thomas M. Wilmoth
N.C. State Bar No. 41684
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: 336-747-4706
Facsimile: 336-726-6906
E-mail: Tom.Wilmoth@wbd-us.com

*Attorney for Defendant*